1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    CALVIN MALONE,

11                              Plaintiff,

12           v.

13    LESLIE SZIEBERT,

14                              Defendant.

CASE NO. 3:15-CV-05552-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: March 16, 2018

15         The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

16    States Magistrate Judge David W. Christel. Plaintiff Calvin Malone, proceeding *pro se* and *in*

17    *forma pauperis*, initiated this civil rights action. Presently pending before the Court are Motions

18    for Summary Judgment filed by Plaintiff (Dkt. 80) and Defendant Dr. Leslie Sziebert

19    ("Defendant") (Dkt. 85).

20         The Court concludes Plaintiff failed to sufficiently rebut Defendant's summary judgment

21    showing on Plaintiff's claims of deliberate indifference to a serious medical need and equal

22    protection violations. As the Court finds Plaintiff's federal claims should not continue in this

23    action and as none of the factors under the pendent jurisdiction doctrine support exercising

24

1    supplemental jurisdiction, the Court finds supplemental jurisdiction should not be exercised over

2    Plaintiff's state law claims. Accordingly, the Court recommends denying Plaintiff's Motion for

3    Summary Judgment (Dkt. 80), granting Defendant's Motion for Summary Judgment (Dkt. 85),

4    and closing this case.

5                                    **BACKGROUND**

6        Plaintiff, a civilly-committed detainee at the Washington Special Commitment Center

7    ("SCC"),[1] initiated this action on August 6, 2015. [2] *See* Dkt. 1; *see also* Dkt. 8 (Complaint).

8    Plaintiff's claims stem from the medical treatment he received when he ruptured his Achilles

9    tendon, and grievances he filed related to his medical treatment, while Defendant was SCC's

10   Medical Director. *See* Dkt. 8. In particular, Plaintiff alleges Defendant was deliberately

11   indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.

12   *Id.* at 12-13, 14-16. Plaintiff also alleges Defendant violated his Fourteenth Amendment Equal

13   Protection rights. *Id.* at 13-14. Plaintiff further brings state law claims against Defendant. *Id.* at

14   16-17, 19.

15       On November 9, 2017, Plaintiff filed a Motion for Summary Judgment. Dkt. 85. That

16   same day, Plaintiff filed a Statement of Facts, Brief in Support of his Motion for Summary

17   Judgment, Declaration, and exhibits. Dkt. 81, 82, 83. On November 27, 2017, Defendant filed a

18   Motion for Summary Judgment. Dkt. 85. To support his Motion for Summary Judgment,

19

20       [1] The SCC houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be
21   sexually violent predators ("SVP"). *See* Wash. Rev. Code §§ 71.09.010-.903. Determinations of SVP status and
     commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-
     term intensive inpatient treatment. *Id.*

22       [2] In his Complaint, Plaintiff named both Defendant and Advanced Registered Nurse Practitioner ("ARNP")
23   Galina Dixon as defendants. Dkt. 8. The Court thereafter dismissed Plaintiff's claims against Nurse Dixon, but gave
     Plaintiff leave to file an amended complaint. Dkt. 43, 46. Rather than filing an amended complaint, Plaintiff filed a
     Motion to Dismiss Nurse Dixon from the case, which the Court granted. Dkt. 50, 53, 57. Therefore, Defendant
24   Sziebert is the only remaining defendant in this case.

1  Defendant filed a Declaration and multiple exhibits. Dkt. 89. Moreover, Defendant filed a

2  Response opposing Plaintiff's Motion for Summary Judgment. Dkt. 86. On December 7, 2017,

3  Plaintiff filed a Response opposing Defendant's Motion for Summary Judgment. Dkt. 80. Both

4  Motions for Summary Judgment became ready for the Court's consideration on January 26,

5  2018. Dkt. 92.

6                                **STANDARD OF REVIEW**

7          Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

8  file, and any affidavits, show there is no genuine dispute as to any material fact and the movant is

9  entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to

10 judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

11 essential element of a claim in the case on which the nonmoving party has the burden of proof.

12 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial

13 where the record, taken as a whole, could not lead a rational trier of fact to find for the

14 nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

15 (nonmoving party must present specific, significant probative evidence, not simply "some

16 metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

17 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

18 requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

19 *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

20 626, 630 (9th Cir. 1987).

21         When parties file cross-motions for summary judgment, as the parties have done here, each

22 motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v.*

23 *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court must review the evidence

24

submitted in support of each cross-motion. *Id.* And, although the parties may each assert there are

no uncontested issues of material fact, the Court must determine whether disputed issues of

material fact are present. *Id.*; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

### DISCUSSION

Plaintiff alleges Defendant was deliberately indifferent to his serious medical needs, in

violation of the Eighth and Fourteenth Amendments, in light of the medical treatment Plaintiff

received for his Achilles tendon injury. Dkt. 8, pp. 12-13, 14-16. In addition, Plaintiff alleges

Defendant violated the Equal Protection Clause of the Fourteenth Amendment based on the

medical treatment he received and grievances he filed related to his treatment. *Id.* at 13-14.

Plaintiff further brings state law claims for negligence and violations of the Washington State

Constitution. *Id.* at 16-17, 19. Defendant and Plaintiff both move for summary judgment on

Plaintiff's claims. *See* Dkt. 80; Dkt. 85.

### I.    Supervisory Liability

On Plaintiff's Eighth and Fourteenth Amendment claims, Defendant maintains summary

judgment should be granted in his favor because Plaintiff attempts to hold him liable due to his

supervisory position at SCC, which is impermissible in a § 1983 action. Dkt. 85, pp. 5-9.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

violation of rights protected by the Constitution or created by federal statute, and (2) the

violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

*Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

To satisfy the second prong, a plaintiff must show the individually named defendant

caused, or personally participated in causing, the alleged harm. *See Leer v. Murphy*, 844 F.2d

1    628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

2    As such, in a § 1983 action, "supervisory officials are not liable for actions of subordinates on

3    any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citing

4    *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, a supervisor may only be liable

5    "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2)

6    a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

7    violation." *Id.* at 646 (citation omitted). Such liability can be imposed, for instance, if the

8    supervisor knew or reasonably should have known his subordinates would cause constitutional

9    injury, or if his own conduct showed reckless indifference to the rights of others. *Starr v. Baca*,

10    652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal citations and quotation marks omitted); *see also*

11    *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (a supervisor is only liable for his subordinates'

12    constitutional violations if he "participated in or directed the violations, or knew of the violations

13    and failed to act to prevent them").

14        A.  Factual Background

15        The facts surrounding Plaintiff's injury and medical treatment are undisputed. On June 4,

16    2014, Plaintiff ruptured his left Achilles tendon during a recreational activity at SCC. Dkt. 8, p. 7.[3]

17    Defendant was SCC's Medical Director at the time. *See* Dkt. 89 ¶ 1. On the day of his injury, an

18    unidentified staff member at SCC's medical clinic saw Plaintiff, issued him Ibuprofen and a

19    hot/cold pack, and told him that his medical provider would see him the next day. Dkt. 8, p. 7; Dkt.

20    89-1, p. 2. On June 5, 2014, Nurse Galina Dixon treated Plaintiff. Dkt. 8, p. 7. Although Nurse

21    ───────────────

22        [3] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment
all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal

23    knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of
perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th

24    Cir. 2004).

1    Dixon prescribed Plaintiff a set of crutches, Plaintiff declined them and agreed to see a specialist

2    the next week. *Id.*; Dkt. 89-3, pp. 2-4. That same day, a staff member consulted Defendant on the

3    injury. Dkt. 89 (Sziebert Dec.) ¶ 5; Dkt. 89-2, p. 4. Defendant "agreed that [Plaintiff] should be

4    referred for an orthopedic consultation." Dkt. 89 (Sziebert Dec.) ¶ 5; *see also* Dkt. 89-2, p. 4.

5         Plaintiff maintains his appointment with the specialist was repeatedly canceled and

6    rescheduled between June 10, 2014 and June 27, 2014. Dkt. 8, pp. 7-8. As a result, Plaintiff

7    submitted several "sick call slips" at SCC to request medical services. *Id.* An unnamed SCC staff

8    member responded to one of Plaintiff's sick call slips by telling Plaintiff he could see a specialist in

9    mid-July. *Id.* at 8; Dkt. 83-1, p. 12. The staff member also told Plaintiff security cancelled an

10   earlier appoint due to a large number of trips scheduled at the same time as his appointment and

11   insufficient staffing. Dkt. 8, p. 8; Dkt. 83-1, p. 12.

12        On June 24, 2014, Plaintiff informed an unnamed SCC staff member that he was scheduled

13   for trial in mid-July and would not be able to attend an appointment at that time. Dkt. 83, p. 3. On

14   June 27, 2014, Plaintiff submitted a grievance outlining his medical treatment concerns "and

15   requesting a sleeved brace, a hot water bottle, and an immediate appointment with a specialist."

16   Dkt. 8, p. 8; *see also* Dkt. 83-1, pp. 14-15. SCC Grievance Investigator Richard Steinbach

17   responded to Plaintiff's grievance by telling him this issue could not be grieved. Dkt. 83-1, p. 17.

18        On June 30, 2014, Nurse Dixon saw Plaintiff for an appointment. Dkt. 8, p. 8. She

19   prescribed naproxen for pain. *Id.* Plaintiff underwent an ankle x-ray on July 1, 2014. *Id.*; Dkt. 89-2,

20   p. 9. On July 10, 2014, Nurse Dixon examined Plaintiff again. Dkt. 8, p. 9. She told Plaintiff his x-

21   ray was normal and he could not see a specialist at that time, but may get an appointment after his

22   trial. *Id.*

23        Plaintiff returned from trial on August 5, 2014, and submitted another sick call slip,

24   seeking to see a specialist. *Id.* On August 8, 2014, Plaintiff saw Dr. William Frederick

Thompson, M.D., for an orthopedic consultation. *Id.* at 9-10; Dkt. 89-3, pp. 2-5. Dr. Thompson

informed Plaintiff of the treatment options, and risks and benefits of each option. Dkt. 89-3, p. 5.

Plaintiff elected not to pursue surgery. *Id.*; *see also* Dkt. 8, pp. 9-10. However, Dr. Thompson

prescribed Plaintiff a "moon boot orthosis" for the injury. Dkt. 89-3, p. 5; Dkt. 8, p. 10. On

August 18, 2014, Plaintiff submitted a sick call slip inquiring into why he had not yet received

the boot. Dkt. 8, p. 10. Plaintiff was fitted for a boot that same day, and received the boot on

August 20, 2014. *Id.*

Thereafter, Plaintiff relied on "physical therapy, exercise, and time" to heal his injury. *Id.*

at 10. On August 30, 2015, Plaintiff was discharged from physical therapy. Dkt. 89-4, p. 2.

Plaintiff told his physical therapist he was "working on [his] stride and walking pretty good." *Id.*

Plaintiff's physical therapist noted he was able to walk one mile on the treadmill at a pace of

three miles per hour and 3% incline, had "[e]xcellent gait and push off," and no limp. *Id.*

Additionally, Plaintiff maintains another SCC resident experienced an identical Achilles

injury about one year after Plaintiff's injury. Dkt. 8, p. 10; *see also* Dkt. 83-1, pp. 26-28. Plaintiff

asserts that, unlike him, this resident received prompt care and ankle surgery within two weeks

of his injury. Dkt. 8, pp. 10-11.

B. <u>Analysis</u>

Plaintiff alleges the medical treatment he received violated his rights under the Eighth and

Fourteenth Amendments because it was untimely and inadequate. *See id.* at 1, 11-16. In all,

Plaintiff asserts Defendant is vicariously liable for the employees who treated Plaintiff because

Defendant was responsible for overseeing, maintaining, and operating SCC's Medical Clinic. *Id.* at

3-4, 12, 17; *see also* Dkt. 82, pp. 5-6, 10-11; Dkt. 91, pp. 2, 6-8, 11-13, 21. However, supervisors

cannot be liable in a § 1983 action on a theory of vicarious liability; rather, Plaintiff must show

Defendant was personally involved in the alleged constitutional deprivation, or that there was a

causal connection between Defendant's conduct and the alleged constitutional deprivation. *See*
*Hansen*, 885 F.2d at 646. Here, Plaintiff fails to allege – or point to any evidence showing –
Defendant was personally involved in, or had any knowledge of or connection to, Plaintiff's
treatment or the alleged constitutional deprivations.

Instead, the undisputed evidence shows Defendant was not personally involved in
Plaintiff's medical treatment. The only involvement Defendant had in Plaintiff's treatment was on
June 5, 2014, when Defendant agreed Plaintiff should see an orthopedic surgeon. Dkt. 89 (Sziebert
Dec.) ¶ 5; *see also* Dkt. 89-2, p. 4. To the extent this can be construed as personal participation, this
involvement does not show Defendant was deliberately indifferent to Plaintiff's medical needs, as
Defendant was not ignoring or failing to respond to Plaintiff. *See McGuckin v. Smith*, 974 F.2d
1050, 1060 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d
1133 (9th Cir. 1997) (en banc). All other instances of medical treatment and decisions regarding
Plaintiff's injury were made by other SCC personnel.

Plaintiff repeatedly references SCC's job description for the "Medical Director" position
in an attempt to show Defendant violated his official duties, as this job description includes
supervising SCC's medical employees. *See, e.g.*, Dkt. 8, pp. 3-4, 17; Dkt. 82, pp. 5-6 10-22; Dkt.
91, pp. 6-8, 11, 12-13. Nevertheless, the fact Defendant was not involved in Plaintiff's treatment
shows he did not reasonably know, and was not recklessly indifferent to, Plaintiff's treatment or
the alleged constitutional deprivations. Furthermore, the "deliberate indifference" standard
requires more than Defendant's mere negligence. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976)
("a complaint that a physician has been negligent in diagnosing or treating a medical condition
does not state a valid claim of medical mistreatment under the Eighth Amendment"); *see also*
*Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir. 2001) (deliberate indifference "cannot be imposed

1  for mere negligence") (citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). Thus, Defendant

2  cannot be held liable for the alleged constitutional deprivations because he was not personally

3  involved in, and had no causal connection to, Plaintiff's medical treatment or the alleged

4  constitutional deprivation.

5      Because Defendant did not personally participate in Plaintiff's medical treatment, the Court

6  recommends granting Defendant's Motion for Summary Judgment, and denying Plaintiff's Motion

7  for Summary Judgment, on Plaintiff's claims of deliberate indifference.

8  **II.    Equal Protection**

9      Plaintiff brings two claims against Defendant under the Fourteenth Amendment Equal

10  Protection Clause. First, Plaintiff alleges Defendant violated the Equal Protection Clause based

11  on the medical treatment he received. *See* Dkt. 8, pp. 13-14. Second, Plaintiff alleges Defendant

12  violated Plaintiff's right to file grievances. *Id.* at 14.

13      A.  Medical Treatment

14      Plaintiff maintains Defendant violated the Equal Protection Clause because "[t]he lack of

15  adequate and prompt medical treatment . . . Plaintiff endured would not be tolerated" in

16  circumstances outside of SCC. *Id.* at 13.

17      The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all

18  persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living*

19  *Center*, 473 U.S. 432, 439 (1985) (citation omitted). To bring a successful equal protection

20  claim, a plaintiff must show differential treatment from a similarly situated class. *See*

21  *Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a

22  claim under § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*,

23  315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of

24  "intentional or purposeful discrimination").

1    Hence, for Plaintiff to prevail on an Equal Protection Clause claim, Plaintiff must not

2   only show differential treatment by Defendant, but also that Defendant intentionally or

3   purposefully discriminated against him. *Id.* But as discussed in Section I, *supra*, the evidence

4   shows Defendant did not personally participate in Plaintiff's treatment. Furthermore, Plaintiff

5   fails to allege how – and does not present any evidence showing – Defendant purposefully or

6   intentionally discriminated against him because Plaintiff belongs to a protected class.

7   Accordingly, the Court recommends granting Defendant's Motion for Summary Judgment, and

8   denying Plaintiff's Motion for Summary Judgment, on Plaintiff's equal protection claim as it

9   relates to his medical treatment.

10    B.  Grievance Process

11    Plaintiff alleges he was denied a grievance procedure to address the medical treatment he

12   received at SCC in violation of the Fourteenth Amendment's Equal Protection Clause. Dkt. 8,

13   pp. 13-14.

14    As explained in Section I, *supra*, Plaintiff filed formal grievances to address his medical

15   treatment, but SCC staff told him that his issues could not be grieved. Notably, there is no

16   constitutionally protected right to a specific grievance process. *See Ramirez v. Galaza,* 334 F.3d

17   850, 860 (9th Cir. 2003) (citing *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988)). Even

18   assuming Plaintiff stated an equal protection claim premised on a lack of grievance process,

19   Plaintiff has not plead Defendant was in any way responsible, or even involved, in preventing

20   Plaintiff from filing a grievance.

21

22

23

24

1    As such, the Court recommends granting summary judgment for Defendant, and denying

2    Plaintiff's summary judgment motion, on Plaintiff's grievance process claim. [4]

3    **III.    State Law Claims**

4    Defendant argues Plaintiff's state law claims fail, as well. Dkt. 85, pp. 9-13. A district

5    court has discretion over whether to exercise supplemental jurisdiction over state law claims

6    arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech.,*

7    *Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)). Ordinarily,

8    when a district court dismisses "all claims independently qualifying for the exercise of federal

9    jurisdiction," it will dismiss all related state claims, as well. *Artis v. District of Columbia*, No.

10    16-460, 2018 WL 491524, 583 U.S. ----, slip. op. at *3 (citing 28 U.S.C. § 1367(c) (2018); *see*

11    *also Carlsbad Tech.*, 556 U.S. at 639-40. Although the court is not required to dismiss the

12    supplemental state law claims, "in the usual case in which all federal-law claims are eliminated

13    before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—

14    judicial economy, fairness, convenience, and comity—will point toward declining to exercise

15    jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

16    343, 350 n.7 (1988).

17    In this case, the Court recommends granting Defendant's Motion for Summary Judgment

18    on all of Plaintiff's federal claims. *See* Sections I & II, *supra*. Accordingly, as none of the factors

19    under the pendent jurisdiction doctrine support exercising supplemental jurisdiction, the Court

20    recommends declining supplemental jurisdiction over Plaintiff's state law claims and dismissing

21    those claims without prejudice.

22    _____

23    [4] Defendant further argues the Court should grant his summary judgment motion because he is entitled to qualified immunity. Dkt. 85, pp. 7-9. Given that the Court recommends granting Defendant's Motion for Summary

24    Judgment on other grounds, the Court declines to consider this additional defense.

REPORT AND RECOMMENDATION - 11

1

**CONCLUSION**

2          Based on the foregoing reasons, the undersigned recommends granting Defendant's

3    Motion for Summary Judgment (Dkt. 85), denying Plaintiff's Motion for Summary Judgment

4    (Dkt. 80), and closing this case.

5          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

7    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

8    review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

9    imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

10   March 16, 2018, as noted in the caption.

11          Dated this 23rd day of February, 2018.

12

13          _____

14          David W. Christel
            United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 12