UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CALVIN MALONE,<br><br>      Plaintiff,<br><br> v.<br><br>LESLIE SZIEBERT,<br><br>      Defendant. | CASE NO. 3:15-CV-05552-RBL-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: November 8, 2019 |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Calvin Malone, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action.

This case is before the Court on remand from the Ninth Circuit Court of Appeals. Presently pending are Second Motions for Summary Judgment filed by Plaintiff (Dkt. 112, "Plaintiff's Second Motion") and Defendant Dr. Leslie Sziebert ("Defendant") (Dkt. 121, "Defendant's Second Motion").

The Court concludes Plaintiff failed to sufficiently rebut Defendant's summary judgment showing on Plaintiff's claims of inadequate medical treatment because Plaintiff has failed to

identify any evidence demonstrating Defendant participated in any treatment decisions relating to Plaintiff's Achilles tendon injury or the scheduling of patients to be transported to medical services. The Court also finds supplemental jurisdiction should not be exercised over Plaintiff's state law claims. Accordingly, the Court recommends denying Plaintiff's Second Motion (Dkt. 112), granting Defendant's Second Motion (Dkt. 121), and closing this case.

## BACKGROUND

Plaintiff, a civilly-committed detainee at the Washington Special Commitment Center ("SCC"),[1] initiated this action on August 6, 2015.[2] *See* Dkt. 8. Plaintiff's remaining claim stems from the medical treatment he received when he ruptured his Achilles tendon, while Defendant was SCC's Medical Director. *See* Dkt. 8. In particular, Plaintiff alleges he received inadequate medical treatment in violation of the Eighth and Fourteenth Amendments. *Id.* at 12-13, 14-16. Plaintiff also alleges state law claims against Defendant. *Id.* at 16-17, 19.

This matter was previously considered by the Court on cross-motions for summary judgment filed in late 2017. On March 16, 2018, the Court granted Defendant's First Motion for Summary Judgment ("Defendant's First Motion") (Dkt. 85) and denied Plaintiff's First Motion for Summary Judgment ("Plaintiff's First Motion") (Dkt. 80) finding Defendant was entitled to summary judgment because Defendant did not personally participate in Plaintiff's medical treatment. Dkts. 93, 94.

---

[1] The SCC houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be sexually violent predators ("SVP"). *See* Wash. Rev. Code §§ 71.09.010-.903. Determinations of SVP status and commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-term intensive inpatient treatment. *Id.* The Court takes judicial notice of the fact that the SCC is located on McNeil Island, Washington and a state-operated ferry is the only regular access to and from the island. *See* Fed. R. Civ. P. 201(b) (allowing for judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

[2] Defendant Sziebert is the only remaining defendant in this case. *See* Dkts. 8, 43, 50, 53, 57.

1     On appeal, the Ninth Circuit reversed and remanded this matter holding:

> [I]t is not clear from the record whether defendant Sziebert, or someone else, is responsible for scheduling patients to be transported to medical services. The position description for the Medical Director provides that the Medical Director has "extensive input into the daily operation of clinical and residential programming," authority "over the entire scope of the [SCC] Program and all of its residential venues," and "direct responsibility for the oversight of all SCC medical policies." Further, Sziebert testified during his deposition that he was aware that Malone had an outpatient appointment that was "not carried out . . . because of a stricture that security placed on [SCC] that there was only two medical trips out." Sziebert additionally admitted during his deposition that "there [are] occasions when the health and safety of a resident is compromised due to the physical location of the facility and the length of time it takes to transport a patient to medical services." On this record, Sziebert has not met his burden of showing that there is no genuine dispute of material fact as to whether he was not responsible for the alleged violations. *See Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (supervisor can be liable under § 1983 for "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury" (citation omitted)); *see also Mitchell*, 818 F.3d at 443-44 (setting forth standards for constitutionally adequate medical care under Fourteenth Amendment and equal protection claims). We vacate summary judgment on these claims and remand for further proceedings.

Dkt. 99 at 2; Dkt. 100; *Malone v. Sziebert*, No. 15-05552, 2016 WL 3033663 (9th Cir. Nov. 27, 2018) (unpublished).

    In August 2019, the parties renewed their motions for summary judgment, with further arguments on whether Defendant was responsible for the scheduling of patients for transportation to off-island medical services and thereby responsible for the alleged constitutional violations. Dkts. 112, 121. On August 8, 2019, Plaintiff filed his Second Motion. Dkt. 112. The same day, Plaintiff filed a Declaration, Brief in Support, and Statement of Facts. Dkts. 113-115. On August 26 and 27, 2019, Defendant field his Second Motion, a Response to Plaintiff's Second Motion, Declaration of Defendant Sziebert, and Declaration of Gregory Silvey to Correct Scrivener's Error in Caption of Defendant's Response. Dkts. 117, 119, 120, 121. On September 11, 2019, Plaintiff filed a Response to Defendant's Second Motion and a Declaration

1  in Support. Dkts. 123, 124. Both Second Motions for Summary Judgment became ready for the
2  Court's consideration on September 20, 2019. Dkt. 122.

### UNDISPUTED FACTS

The Court previously outlined the undisputed facts related to Plaintiff's injury and medical treatment in its February 23, 2018 Report and Recommendation. Dkt. 93. Because the parties are familiar with the facts, the Court recites them only as necessary to explain this Report and Recommendation.[3]

On June 4, 2014, Plaintiff ruptured his left Achilles tendon during a recreational activity at SCC. Dkt. 8 at 7;[4] Dkt. 119 (Sziebert Declaration) at ¶ 4; Dkt. 124 at 2 (Plaintiff's Declaration in Opposition to Defendant's Second Motion). Defendant was SCC's Medical Director at the time. *See* Dkt. 119 at ¶ 1; Dkt. 124 at 2. On June 5, 2014, ARNP, Galina Dixon, a SCC medical staff member, briefly consulted Defendant on the injury. Dkt. 119 at ¶ 5; Dkt. 119, Exhibit B at 1-3; Dkt. 124 at 2-3. Defendant "agreed that [Plaintiff] should be referred for an orthopedic consultation." Dkt. 119. at ¶ 5; *see also* Dkt. 119, Exhibit B at 1-3; Dkt. 124 at 2-3.

Plaintiff was initially scheduled for an appointment with the orthopedic specialist ("specialist") on June 10, 2014 and on June 13, 2014. Dkt. 8 at 7-8; Dkt. 119 at ¶ 5; Dkt. 124 at 3. Plaintiff was "unable to make either trip due to off-island transportation limitations. He was rescheduled for July 15[, 2014], but [Plaintiff] elected not to go at that time because of a pre-

---

[3] The Court now refers to the renewed declarations of Plaintiff and Defendant. Dkts. 119, 124.

[4] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

existing court date he wanted to keep." Dkt. 119 at ¶ 5; Dkt. 119, Exhibits A, B.; *See also* Dkt. 8 at 7-9 and Dkt. 124 at 3-5.

On June 30, 2014, Nurse Dixon saw Plaintiff for an appointment. Dkt. 8 at 8. She prescribed naproxen for pain. *Id.* Plaintiff underwent an ankle x-ray on July 1, 2014. *Id.*; Dkt. 124 at 4. On July 10, 2014, Nurse Dixon examined Plaintiff again. Dkt. 8 at 9; Dkt. 124 at 4-5. She told Plaintiff his x-ray was normal, and he could not see a specialist at that time but may get an appointment after his trial. *Id.*

Plaintiff returned from trial on August 5, 2014, and submitted another sick call slip, seeking to see a specialist. *Id.* On August 8, 2014, Plaintiff saw Dr. William Frederick Thompson, M.D., for an orthopedic consultation. *Id.* at 9-10; Dkt. 119 at ¶ 5; Dkt. 124 at 5-6. Dr. Thompson prescribed Plaintiff a "moon boot orthosis" for the injury. Dkt. 124 at 6. Thereafter, Plaintiff relied on "physical therapy, exercise, and time" to heal his injury. Dkt. 8 at 10; Dkt. 124 at 6.

## STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When parties file cross-motions for summary judgment, as the parties have done here, each motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court must review the evidence submitted in support of each cross-motion. *Id*. And, although the parties may each assert there are no uncontested issues of material fact, the Court must determine whether disputed issues of material fact are present. *Id.*; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

## DISCUSSION

Defendant maintains summary judgment should be granted because Plaintiff has not identified any evidence demonstrating Defendant participated in any treatment decisions relating to Plaintiff's Achilles tendon injury and Defendant had no control over arrangements to see off-island medical providers. Dkt. 121.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To satisfy the second prong, a plaintiff must show the individually named defendant caused, or personally participated in causing, the alleged harm. *See Leer v. Murphy*, 844 F.2d

628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). As such, in a § 1983 action, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, a supervisor may only be liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 646 (citation omitted). "The requisite causal connection can be established ... by setting in motion a *series of acts* by others, or by knowingly refus[ing] to terminate a *series of acts* by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011); *See also Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (holding that without allegations of a specific instance of the use of excessive force, plaintiffs failed to establish that three administrators in police chain of command set in motion a series of actions and that they knew or reasonably should have known would cause a constitutional injury) (internal citation omitted).

Claims of inadequate medical care in civil commitment cases are analyzed under the due process clause of the Fourteenth Amendment. *Mitchell v. Washington*, 818 F.3d 436 (9th Cir. 2016) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *Ammons v. Wash. Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). "Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators. . . . [W]hether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional." *Ammons v. Dep't. of Soc. & Health Servs.,* 648 F.3d

1020, 1027 (9th Cir. 2011); *See also Youngberg,* 457 U.S. at 323 ("[I]f made by a professional, [a decision] is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.").

It is undisputed that other than agreeing with Nurse Dixon that Plaintiff should be seen by an orthopedic specialist, Defendant did not participate in any treatment decisions related to Plaintiff's Achilles tendon injury. *See* Dkt. 119 at ¶ 5; Dkt. 119 at Exhibit B; Dkt. 124 at 2-6. It is also undisputed Plaintiff was initially scheduled for an appointment with a specialist on June 10, 2014 and again on June 13, 2014, but both appointments were rescheduled because of off-island transportation limitations. Dkt. 119 at ¶ 5; Dkt. 124 at 4-5. Plaintiff's appointment was rescheduled a third time for July 15, 2014, but Plaintiff elected not to attend the appointment because it conflicted with his court date. Dkt. 119 at ¶ 5; Dkt. 124 at 4-5.[5]

With respect to scheduling patients to be transported to medical services, in his renewed declaration, Defendant has presented evidence he was not responsible for scheduling patient appointments at SCC or off-island medical trips. Dkt. 119 (Declaration of Defendant Sziebert). Defendant testified:

> In my position as Medical Director, I was not responsible for setting limits on the number of off-island medical trips that could be made per day. My understanding is that the limits for off-island transportation was set by SCC security management based upon staffing levels for security at the facility. The medical department did not set those limits.

---

[5] Although Plaintiff alleges he never cancelled an appointment, he does not dispute he could not attend the July 15, 2014 appointment because of his upcoming court date. Dkt. 124 at 4-5, 11.

REPORT AND RECOMMENDATION - 8

1 | Dkt. 119 at ¶ 6. Defendant further testified he "was not involved in the scheduling of off-island
2 | medical trips for Mr. Malone. The scheduling of his visits was handled by primary care providers
3 | contracted to SCC, and SCC medical staff." *Id.* at ¶ 7.
4 |     In opposition to Defendant's Second Motion, Plaintiff generally argues that Defendant, by
5 | virtue of his position as SCC Medical Director, was responsible for Plaintiff's medical care or
6 | lack thereof, and was "responsible in a supervisory capacity to assure that subordinates provided
7 | proper medical care to SCC residents including the Plaintiff according to his signed job
8 | description." Dkt. 124 at 11-12. Plaintiff submits evidence Defendant had "direct responsibility
9 | for oversight of all SCC medical policies" and was responsible for supervision and direction of
10 | SCC medical staff. Dkt. 124 at 11-12. However, Plaintiff has not submitted any evidence
11 | demonstrating personal involvement by Defendant. Except for Plaintiff's reiteration of
12 | Defendant's job description, Plaintiff has not offered any evidence to support causation. To avoid
13 | summary judgment, Plaintiff must set forth specific facts showing that there is a genuine issue for
14 | trial." Fed. R. Civ. P. 56(e).
15 |     The only evidence linking Defendant to Plaintiff's treatment and scheduling of the
16 | specialist appointment is Defendant approved the recommendation to see a specialist and was
17 | aware Plaintiff's appointment was rescheduled. Dkt. 119 at ¶ 5; Dkt. 83-1 at 46-47 (Deposition
18 | of Defendant) (Defendant states he was aware that Plaintiff's specialist appointment was
19 | scheduled within a week of his injury, but the appointment "was not carried out by – because of
20 | a stricture that security placed on us that there was only two medical trips out. And then I further
21 | understand that in your case, your commitment trial was butted right up against the injury.").
22 | However, this evidence only establishes Defendant knew Plaintiff's appointment was
23 | rescheduled due to off-island transportation restrictions at SCC and Plaintiff's court date. It does
24 |

1  not sufficiently establish a causal connection that Defendant was personally involved in the delay
2  in scheduling Plaintiff's specialist visit between June and August 2014. Plaintiff has not
3  submitted any evidence Defendant had any control over when Plaintiff saw a specialist after
4  Defendant approved the recommendation for the specialist appointment.  Plaintiff has also not
5  submitted any evidence that Defendant could have expedited Plaintiff's specialist appointment
6  but failed to do so. There is no evidence Defendant had any authority over SCC security staff or
7  could require SCC security staff to escort Plaintiff to a specialist appointment. The evidence
8  reflects Defendant was required to defer to SCC security staff regarding scheduling off-island
9  appointments and did so. Dkt. 119 at ¶ 4-5.

10  Moreover, while Plaintiff cites to Defendant's testimony he "made the lack of a medical
11  diagnosis" to treat Plaintiff to support his contention Defendant did provide Plaintiff medical
12  treatment, when this statement is read in the context of the entire deposition, it is clear Defendant
13  was referring to a psychiatric examination in connection with Plaintiff's treatment for hepatitis
14  C, not Plaintiff's Achilles tendon injury. Dkt. 83-1 at 43-44 (Deposition of Defendant) (when
15  asked if Defendant had ever made a medical diagnosis to treat Plaintiff, Defendant responded he
16  made the lack of a medical diagnosis and "we sat and talked about the potential of you being
17  treated for hepatitis C, and the intent of that meeting was to assess whether you had depression or
18  whether there was a psychiatric contraindication to treating you[]").

19  In further support of his claim, Plaintiff points to Defendant's statement there are
20  instances when the health and safety of a SCC resident is compromised due to the location of the
21  SCC. Dkt, 124 at 8 (citing Dkt. 83-1, Defendant's Deposition). However, this statement  does not
22  demonstrate Defendant had any control over the scheduling or transportation of SCC residents to
23  off-island appointments, or that Defendant was personally involved any constitutional injury. *See*
24

Dkt. 83-1 at 58. Rather, this statement reflects the fact that the SCC is located on an island, and because of its geographic location, there are additional logistical hurdles regarding access medical providers who are not on the island. In addition, the undisputed evidence shows Defendant was required to defer to SCC security staff regarding scheduling off-island appointments. Dkt. 119 at ¶ 5.

In sum, there is no evidence Defendant was directly involved in Plaintiff's treatment, determined the course of treatment, or scheduled any specialist appointments for Plaintiff. Defendant states he has no control over arrangements made to see off-island medical providers, and after Defendant approves a recommendation for a SCC resident to see a specialist off-island, the arrangements are handled by other SCC staff members. *See* Dkt. 119. Plaintiff has offered no evidence in rebuttal. *See* Dkts. 8, 124. Defendant, therefore, cannot reasonably be found to have caused any injury resulting from the delay in scheduling Plaintiff's appointment with a specialist. *Starr*, 652 F.3d at 1207-08. It is not enough that Defendant bore supervisory responsibility for the activities of the SCC medical department. Plaintiff has failed to establish Defendant "set[ ] in motion a series of acts" that Defendant "knew or reasonably should have known" would cause the SCC medical staff "to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08; *Felarca v*, 891 F.3d at 819-20; *See also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (it is insufficient for a plaintiff to only allege the defendant, as a supervisor, knew about any alleged constitutional violation and the supervisor generally tolerated the violation, without alleging "a specific policy" or "a specific event or events" instigated by the supervisor that led to the constitutional violations). Without such a causal connection, Plaintiff cannot hold Defendant liable solely by virtue of his office and there is no respondeat superior liability under § 1983. *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002).

1    Plaintiff's pleadings are considered a valid opposition to oppose summary judgment, but
2 neither his complaint or his declaration, Dkts. 8, 124, establish facts within Plaintiff's knowledge
3 which create a material issue of triable fact. Accordingly, viewing the evidence in the light most
4 favorable to Plaintiff, he has failed to create a genuine issue of material fact Defendant is subject
5 to supervisory liability or any other form of liability under §1983. *See Celotex,* 477 U.S. at 322
6 (summary judgment is appropriate against a party who "fails to make a showing sufficient to
7 establish the existence of an element essential to that party's case, and on which that party will
8 bear the burden of proof at trial"). Plaintiff does not meet his burden for summary judgment on
9 his Second Motion and fails to present affirmative evidence to avoid summary judgment on
10 Defendant' Second Motion. Based on this evidence, a reasonable jury could not conclude that
11 Defendant was personally involved in any constitutional injury. Therefore, the Court
12 recommends that Plaintiff's Second Motion be denied, and that Defendant's Second Motion be
13 granted.[6]

14    Defendant argues Plaintiff's state law claims fail as well. Dkt. 121. A district court has
15 discretion over whether to exercise supplemental jurisdiction over state law claims arising from
16 the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio,*
17 *Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)). Ordinarily, when a district
18 court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it
19 will dismiss all related state claims, as well. *Artis v. District of Columbia*, No. 16-460, 2018 WL
20 491524, 583 U.S. ----, slip. op. at *3 (citing 28 U.S.C. § 1367(c)) (2018); *see also Carlsbad*
21 *Tech.*, 556 U.S. at 639-40. Although the court is not required to dismiss the supplemental state

---

[6] Defendant further argues the Court should grant his summary judgment motion because he is entitled to qualified immunity. Dkt. 121. Given that the Court recommends granting Defendant's Second Motion on other grounds, the Court declines to consider this additional defense.

law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, fairness, convenience, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

In this case, the Court recommends granting Defendant's Second Motion on all Plaintiff's federal claims. *See supra*. Accordingly, as none of the factors under the pendent jurisdiction doctrine support exercising supplemental jurisdiction, the Court recommends declining supplemental jurisdiction over Plaintiff's state law claims and dismissing those claims without prejudice.

## CONCLUSION

Based on the foregoing reasons, the undersigned recommends granting Defendant's Second Motion (Dkt. 121), denying Plaintiff's Second Motion (Dkt. 112), and closing this case.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on November 8, 2019 as noted in the caption.

Dated this 17th day of October, 2019.

David W. Christel
United States Magistrate Judge